**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-0723-WJM-BNB

WILLOW GROVE, LTD.,

    Plaintiff,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
FEDERAL HOUSING FINANCE AGENCY,
BULLS CAPITAL PARTNERS, LLC, and
PILLAR MULTIFAMILY, LLC, a Delaware company

    Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

---

Plaintiff Willow Grove, Ltd. ("Plaintiff") brings this action against Pillar Multifamily, LLC ("Pillar") as successor in interest to Bulls Capital Partners, LLC ("Bulls Capital") (together the "Broker Defendants"), Federal National Mortgage Associate ("Fannie Mae") and Federal Housing Finance Agency ("FHFA") as its conservator (together the "Government Defendants") (collectively "Defendants").  Before this Court are Pillar's Motion to Dismiss Plaintiff's Complaint ("Pillar Motion") (ECF No. 14), and the Government Defendants' Motion to Dismiss ("Government Motion").  (ECF No. 15.)  For the foregoing reasons, the Pillar Motion and the Government Motion are both granted.

**I. BACKGROUND**

The following allegations, contained in Plaintiff's operative Complaint and the attached exhibits, are accepted as true for purposes of Defendants' Motions to Dismiss.

Plaintiff owned Willow Grove Village Apartments (the "Willow Grove Property"), a

multifamily apartment complex located in Fort Collins, Colorado. (ECF No. 21 at 1.) Plaintiff needed refinancing on a Willow Grove Property loan that was scheduled to come due on or about April 1, 2009. (Compl. (ECF No. 3) ¶ 7.) Plaintiff, through its general partner, initiated discussions with various mortgage brokers, and decided to conduct the refinancing process with Bulls Capital. (*Id.* ¶ 15.)

Plaintiff obtained a conditional commitment for a loan refinancing package from Bulls Capital on or about March 20, 2009. (*Id.* ¶ 17.) The loan refinancing package included a Multifamily Note ("Note") (ECF No. 7-1) and a Multifamily Deed of Trusts, Assignment of Rents, and Security Agreement ("Deed of Trust") (ECF No. 7-2). Plaintiff committed to entering into a ten-year loan that required Plaintiff to pay a "prepayment premium," including a yield maintenance prepayment penalty, in the event Plaintiff prepaid the secured debt. (Note pp. 5-6 & Schedule A.) Plaintiff was aware of the prepayment premium before obtaining the conditional commitment for the loan refinancing package. (*Id.* ¶ 19.)

Between signing the conditional commitment and executing the loan refinancing package, Plaintiff asked Bulls Capital about the yield maintenance prepayment penalty. (Compl. ¶ 35.) A Bulls Capital representative explained that the formula used to calculate the prepayment penalty was difficult to explain, but that the prepayment penalty would be at least one percent. (Compl. ¶ 35.) Plaintiff indicated that it might sell the Willow Grove Property within five years, and that it did not want to enter into a ten-year loan. (Compl. ¶ 36). Bulls Capital told Plaintiff that there were a limited number of loans available, and if Plaintiff wanted the loan it had to agree to the loan's terms. (*Id.* ¶ 37.)

The loan was executed on April 3, 2009 (the "Loan"). (Note p. 1 & Deed of Trust p. 1.) When the Loan closed, Bulls Capital assigned the Loan documents to Fannie Mae. (Compl. ¶ 52.) In 2010, Pillar purchased all of Bulls Capital's assets and became its successor in interest on the Loan. (*Id.* ¶ 4.)

On July 13, 2012, Plaintiff entered into a contract to sell the Willow Grove Property. (*Id.* ¶ 53.) As a condition to the sale, Plaintiff was required to obtain a release of the deed of trust held by Fannie Mae in order to pass title to the buyers without encumbrance. (*Id.* ¶ 54.) Plaintiff notified Fannie Mae that it intended to sell the Willow Grove Property, and requested to prepay the remainder of the loan. (*Id.* ¶ 55.) When the Willow Grove Property sale closed on December 31, 2012, Plaintiff paid Fannie Mae the remaining principal of $2,560,913.23 and a prepayment penalty of $737,508.29, which was nearly 30% of the loan principal. (*Id.* ¶¶ 55, 59.)

On February 28, 2013, Plaintiff filed this action against Defendants bringing four claims for relief: (1) fraudulent concealment and/or nondisclosure against the Broker Defendants; (2) unconscionable contract against all Defendants; (3) liquidated damages against all Defendants; and (4) unjust enrichment against the Government Defendants. (Compl. pp. 4-8.) The Complaint was filed in the District Court for Larimer County, Colorado. (ECF No. 1-1a.) The Government Defendants removed the action to federal court on March 19, 2013. (ECF No. 1.)

## II. SUBJECT MATTER JURISDICTION

The Government Defendants move to dismiss the claims against them on the basis that the Court does not have subject matter jurisdiction.

**A.     Legal Standard**

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of jurisdiction over the subject matter.  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint.  See Castaneda v. INS, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  Id.

**B.     Analysis**

In 2008, Congress enacted the Housing and Economic Recovery Act of 2008 ("HERA") and established FHFA as an independent federal agency.  Pub. L. No. 110–289, 122 Stat. 2654 (codified at 12 U.S.C. § 4511).  FHFA was charged with supervising Fannie Mae, and was granted the power to place Fannie Mae into conservatorship, which it did on September 6, 2008.  See 12 U.S.C. § 4617(a)(2) ("[FHFA] may, at the discretion of the Director, be appointed conservator or receiver for the purpose of reorganizing, rehabilitating, or winding up the affairs of a regulated entity.").  Under HERA, FHFA may "enforce any contract . . . entered into by [Fannie Mae]."  12 U.S.C. § 4617(d)(13)(A).  FHFA may also "collect all obligations and money

due [to Fannie Mae]." 12 U.S.C. § 4617(b)(2)(B)(ii).

The Government Defendants argue that Plaintiff's claims are barred by 12 U.S.C. § 4617(f), which provides: "Except as provided in this section or at the request of the Director, no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver." This argument fails, however, because Plaintiff seeks monetary damages. (Compl. pp. 5-8.) Section 4617(f) does not preclude the recovery of monetary damages. *See Mile High Banks v. F.D.I.C.,* 2011 WL 2174004, at *4 n.2 (D. Colo. June 2, 2011) ("Section 1821(j)[1] does not preclude the recovery of monetary damages . . . ."); *Saint George Maronite Catholic Church v. Green*, 1994 WL 763743 (W.D. Tex. July 25, 1994) ("Pursuant to 12 U.S.C. § 1821(j), the Court could only grant monetary damages should Plaintiff prevail on its claims against any Defendant. Therefore, Defendants' motions to dismiss will be granted such that any of Plaintiff's claims for relief other than money damages will be dismissed.") Therefore, the Court finds that Section 4617 does not preclude judicial review.

### III. PLAINTIFF'S CLAIMS

Both Motions move for dismissal under Rule 12(b)(6), arguing that Plaintiff's Complaint fails to state a claim upon which relief could be granted.

---

[1] The Court acknowledges that *Mile High Banks* involves the Federal Deposit Insurance Corporation ("FDIC") and a different statute. However, "[c]ourts interpreting the scope of section 4617(f) have relied on decisions addressing the nearly identical jurisdictional bar applicable to the [FDIC] conservatorships contained in 12 U.S.C. § 1821(j)." *Natural Res. Def. Council, Inc. v. Federal Hous. Fin. Agency*, 815 F. Supp. 2d 630, 641 (S.D.N.Y. 2011) *aff'd sub nom. Town of Babylon v. Federal Hous. Fin. Agency*, 699 F.3d 221 (2d Cir. 2012).

**A.    Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." In evaluating such a motion, a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

"In considering a Rule 12(b)(6) motion, the Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits[.]" *Llewellyn v. Shearson Fin. Network, Inc.*, 622 F. Supp. 2d 1062, 1066-67 (D. Colo. 2009) (citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001)). Thus, in addition to the allegations in the Complaint itself, the Court will consider the exhibits that were attached to the Complaint, and specifically referred to in the Complaint.

**B.     ANALYSIS**

Plaintiff asserts four causes of action, one against the Broker Defendants, two against all Defendants, and one against Fannie Mae. The Court will take each of Plaintiff's claims in turn.

    1.    <u>Non-disclosure/Concealment</u>[2]

Against Pillar, as successor in interest to Bulls Capitol, Plaintiff brings a claim for nondisclosure/concealment, alleging that Bulls Capital concealed or failed to disclose the manner in which the prepayment penalty was to be calculated and that the prepayment penalty would be significant.

To assert a claim for fraudulent concealment, Plaintiff must show:

(1) [T]he concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

*Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (citing *Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1361 (Colo. 1993)).

With respect to the first element, Plaintiff alleges that Bulls Capital "concealed the manner of calculation and the significance of the prepayment premium amount, or failed to disclose it, with intent of creating a false impression of the actual facts in the mind of [Plaintiff]." (Compl. ¶ 39.) Specifically, Plaintiff alleges that a representative of

---

[2] The Broker Defendants argue that Plaintiff's claim for non-disclosure and/or concealment should be dismissed because: (1) the claim is barred by the economic loss rule, and (2) the claim relies on extrinsic evidence. (Pillar Motion pp. 4-7). This Court need not address these issues because Plaintiff's claim fails as a matter of law.

Bulls Capital did not adequately explain how the prepayment premium would be calculated. *Id.*

The Court finds that this fails to show that Bulls Capital concealed a material fact. Plaintiff admits that the Bulls Capital representative responded to its inquiry about the prepayment penalty by stating that the formula was difficult to explain, and that the penalty would be at least one percent. (*Id.* ¶ 35.) Plaintiff has not shown any inaccuracy or misstatement in this representation. Further, the prepayment premium formula was laid out in Schedule A to the Note, which Plaintiff initialed when executing the Loan. (Note at Schedule A.)

Therefore, the Court finds that Plaintiff's allegations are insufficient to allege that the Bank Defendants concealed or failed to disclose information regarding the prepayment penalty. Because the defect is not curable by amendment, the Court dismisses this claim with prejudice. *See Bauchman ex rel. Bauchman v. West High Sch.*, 132 F.3d 542, 559 (10th Cir. 1997).

    2.    <u>Unenforceable Liquidated Damages</u>

Plaintiff brings a claim for unenforceable liquidated damages against Defendants. Specifically, Plaintiff claims that the sale of the Willow Grove Property constituted an "Event of Default" in the Deed of Trust, thus turning the prepayment premium into an unenforceable liquidated damage. *See* ECF No. 22 at 11 (quoting Deed of Trust at § 21.))

Liquidated damages are one kind of remedy for breach of contract. *See Planned Pethood Plus, Inc. v. KeyCorp, Inc.*, 228 P.3d 262, 264 (Colo. 2010). They are generally unenforceable under common law, where a borrower has no right to obtain

release of a deed of trust by tendering the principal balance before it is due unless provided for in the contract.  *See Planned Pethood*, 228 P.3d at 265.  In the absence of a clause permitting prepayment, courts have regarded prepayment as a breach of contract.  *In re A.J. Lane & Co.*, 113 B.R. 821, 827 (Bankr. D. Mass. 1990).

However, prepayment provisions in a contract grant borrowers the right to prepay the loan in exchange for paying the lender a fee.  Because the borrower retains control over the manner of performance, prepayment with a penalty is an alternative manner of performance, and does not constitute a breach of contract.  *See Great Plains Real Estate Dev. v. Union Cent. Life Ins. Co.*, 536 F.3d 939, 945 (8th Cir. 2008); *UIP Ltd., L.L.C. v. Lincoln Nat. Life Ins. Co.*, 2009 WL 4497233, at *12 (D. Ariz. Nov. 30, 2009) ("[P]repayment of a loan is not a right or an obligation, but rather an optional contractual privilege given to the borrower by the lender.").

Here, the loan documents contained a prepayment provision.  (Note pp. 5-6 & Schedule A.)  This provision was invoked by Plaintiff when it sold the Willow Grove Property three years into a ten-year loan.  Because the loan had a prepayment penalty provision, Plaintiff did not breach the contract when it sold the property.  As such, there can be no liquidated damages.  Therefore, the Court finds that the prepayment penalty is not a unenforceable liquidated damages clause in the contract.  *See Planned Pethood*, 228 P.3d at 264 ("Where a borrower exercises an alternative form of performance by invoking a prepayment privilege, the law of liquidated damages in inapplicable.").

    3.    <u>Unconscionable Contract</u>

Even if the Court found that the prepayment penalty was a liquidated damage,

the penalty would be permitted if it were "reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss." *Planned Pethood*, 228 P.3d at 264 (internal citations omitted); *see also* Restatement (Second) of Contracts § 356(1).

The Loan's prepayment premium provision included a yield maintenance prepayment penalty, (Note at Schedule A), which "allows the lender to earn the same yield on reinvestment as it would have if the borrower had not prepaid and had made all scheduled payments over the life of the loan." *UIP Ltd.*, 2009 WL 4497233, at *5. Thus, the further along a borrower is in the duration of the loan, the lower the prepayment penalty.

In this case, the prepayment penalty was calculated by taking the difference between the interest rate on the loan and the current yield rate the bank would receive reinvesting the loan proceeds. (Note at Schedule A.) This rate is then multiplied by the amount of principal remaining on the loan, and also by the present value factor. (*Id.*)

Here, the Loan term was 120 months, the amortization period was 360 months, and the monthly installments were $15,981.90. (Note pp. 1 & 2.) In buying out the Loan, Plaintiff paid the Government Defendants a prepayment penalty of $737,508.29, which is about a 30% penalty. (Compl. ¶ 11.) Based on the monthly installments, had the Loan not be terminated early, Plaintiff would have paid over $1,458,000.00 in interest at the end of the 120 month period.[3] Because Plaintiff prepaid the Loan

---

[3] The Court notes that Plaintiff would have paid approximately $500,000 in interest by the time it prepaid the Loan. The interest amounts were calculated using a mortgage amortization schedule generator. *See* Mortgage Amortization Schedule Generator, http://www.fiscalagents.com/toolbox/cal/mort/mort_am_sched.shtml (last visited Dec. 19, 2013).

sometime between August and December 2012, when 80-84 payments remained, Defendants received only about half of the interest they expected.

Considering the fact that Plaintiff prepaid the loan almost six and a half years before the Loan's maturity date, and based on the amount of interest the Bank Defendants expected to receive if the loan had matured, the Court finds that the prepayment penalty of nearly 30% was not unconscionable. *Williams v. Fassler*, 110 Cal. App. 3d 7, 13 (Ct. App. 1980) ("We do hold that in a transaction between private parties, an agreement specifying a 50 percent prepayment penalty is valid if the penalty is reasonably related to the obligee's anticipated risk of incurring increased tax liability upon the occurrence of the prepayment."); *In re Fin. Ctr. Assocs. of E. Meadow, L.P.*, 140 B.R. 829, 839 (Bankr. E.D.N.Y. 1992) (internal citation omitted) (finding prepayment of 24.9% high, but not unreasonable).

Additionally, courts have found that "prepayment of a loan is not a right or an obligation, but rather an optional contractual privilege given to the borrower by the lender." *UIP Ltd., 2009 WL 4497233*, at *12. Therefore, "[t]he prepayment premium cannot be unconscionable where [Plaintiff] can simply avoid it by continuing to pay off the loan to maturity." *Id.* Here, Plaintiff was not required to pay the prepayment penalty. It could have continued to pay the Loan on its terms. As such, the Court finds that the prepayment penalty was not unconscionable.

4. <u>Unjust Enrichment</u>

Finally, Plaintiff brings a claim against Fannie Mae for unjust enrichment, arguing that if the Court determines that the prepayment penalty provision is unenforceable, then there is no "express contract" provision that controls, and Plaintiff is entitled to a

recovery in the amount of the prepayment penalty.  (ECF No. 22 at 14.)

The Court has determined that the prepayment penalty is an enforceable contract between Plaintiff and Fannie Mae.  Therefore, the contract precludes Plaintiff's unjust enrichment claim.  *Rossetti Associates, Inc. v. Santa Fe 125 Denver, LLC*, 2011 WL 834177, at *7 (D. Colo. Mar. 4, 2011) (citing *Interbank Investments, LLC, v. Eagle River Water and Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003)) ("Where there is an express contract covering the same subject matter, a party generally cannot recover under unjust enrichment.").

## IV. CONCLUSION

Accordingly, the Court ORDERS as follows:

1. The Pillar Motion (ECF No. 14) is GRANTED, and the claims asserted against Pillar are DISMISSED WITH PREJUDICE; and

2. The Government Motion (ECF No. 15) is GRANTED, and the claims asserted against the Government are DISMISSED WITH PREJUDICE; and

3. Although Bulls Capital is listed as a Defendant in this case, Pillar purchased all of Bulls Capital's assets and is the sole remaining legal entity.  All of Plaintiffs claims are against Pillar, as successor in interest to Bulls Capital.  Therefore, the claims against Bulls Capital are also DISMISSED WITH PREJUDICE; and

4. The Clerk shall enter judgment and close the case.  Defendants shall have their costs.

Dated this 31st day of December, 2013.

BY THE COURT:

_____
William J. Martínez
United States District Judge